1

2

3

4

5                      UNITED STATES DISTRICT COURT

6                     EASTERN DISTRICT OF WASHINGTON

7

8    RONALD GIDGE, a Washington
     Resident,                              NO.  CV-09-3052-EFS

9                  Plaintiff,

10         v.                               **ORDER GRANTING AND DENYING IN PART
                                            DEFENDANTS' MOTION FOR SUMMARY
11   YAKIMA COUNTY; YAKIMA COUNTY           JUDGMENT and PLAINTIFF'S MOTION
     PROBATION SERVICES and                 FOR PARTIAL JUDGMENT ON THE
12   DONALD BELISLE, in his                 PLEADINGS and DENYING PLAINTIFF'S
     Individual and Official                MOTION FOR PARTIAL SUMMARY
13   Capacity as Yakima County              JUDGMENT**
     Probation Services Manager,
14
                   Defendants.
15

16        Before the Court, without oral argument, are Defendants Yakima

17   County, Yakima County Probation Services, and Donald Belisle's Motion

18   for Summary Judgment (ECF No. 24), Plaintiff Ronald Gidge's Motion for

19   Partial Judgment on the Pleadings (ECF No. 36), and Plaintiff's Motion

20   for Partial Summary Judgment (ECF No. 31).   After reviewing the

21   submitted material and applicable authority, the Court is fully informed

22   and for the reasons set forth below grants and denies in part

23   Plaintiff's motion for judgment on the pleadings, grants and denies in

24   part Defendants' summary judgment motion, and denies Plaintiff's summary

25   judgment motion.

26

27

28   ORDER - 1

**A.    Facts**[1]

Plaintiff Ronald Gidge was a Yakima County Probation Officer from February 1986 to April 2, 2008.[2]  As a probation officer, he interviewed, assessed, and counseled Yakima County criminal justice system offenders and documented their progress.  As part of his duties, Plaintiff testified in court and attended case staffing meetings.  To fulfil these duties, a probation officer must be flexible, willing to negotiate, and calmly communicate with offenders.

Plaintiff's performance evaluations indicate that he met these expectations.  In addition, Plaintiff's pay was never reduced or benefits reduced.  Since 2002, Plaintiff was supervised by Defendant Donald Belisle, the Yakima County Probation Services Manager.  Although Defendant Belisle understood that Plaintiff had a reputation for being prone to explosive emotional outbursts, the only disciplinary action taken against Plaintiff was for spending too much time at lunch, and Plaintiff was receptive to this criticism.

---

[1]  The parties were ordered to meet and confer to identify the undisputed facts.  The parties advised they were unable to identify any undisputed facts.  (ECF Nos. 62 & 63.)  Nonetheless, upon review of the parties' submissions, the Court finds that the parties did agree as to many of the facts.  The Court treats these facts as established consistent with Federal Rule of Civil Procedure 56(d), and sets these forth in this "Facts" section without a reference to an ECF number.  Any facts supported by a citation to the record are disputed.

[2]  No written employment agreement governed this employment relationship.

ORDER - 2

In 2004, Plaintiff began consulting with psychologist Dr. Sandra K. Saffran to address the stress and anxiety that he was experiencing due to a previous bankruptcy and issues relating to his children and aging parents. Dr. Saffran diagnosed Plaintiff with Major Depressive Disorder and General Anxiety Disorder. The medical records reviewed by Dr. Saffran indicate that Plaintiff's general medical practitioners had previously prescribed medication to treat anxiety and depression. (ECF No. 48 ¶ 2.)

In 2005, Plaintiff began discussing his work-related stressors, including his difficulty working with Defendant Belisle, in more detail with Dr. Saffran. Plaintiff relayed that Defendant Belisle was demanding, would criticize his work, and would check in on him in an antagonizing manner. As Dr. Saffran's therapeutic relationship with Plaintiff developed, it became apparent to her that Plaintiff distorted and mis-perceived Defendant Belisle's actions. Despite this recognition, on September 26, 2005, Dr. Saffran prepared a letter for Plaintiff's employer, which stated that Plaintiff suffered from General Anxiety Disorder and Major Depressive Disorder, listed the symptoms that he suffered, and recommended the following accommodations to help Plaintiff's disability:

a. Decrease the amount of distractions Mr. Gidge encounters during his work day
b. Provide Mr. Gidge with a quite [sic] and calm work environment
c. Provide Mr. Gidge with written instructions regarding work assignments thereby decreasing any misinterpretation that would occur
d. Provide Mr. Gidge with social support outlets and the ability to collaborate with his peers
e. Provide Mr. Gidge with his right to privacy regarding his disability and accommodations

ORDER - 3

(ECF No. 48 Ex. A.)  Plaintiff delivered a copy of this letter to both the Yakima County Department of Human Resources and Defendant Belisle. Plaintiff states that Defendant Belisle simply placed the letter on a credenza and did not discuss or implement any of the requested changes. (ECF No. 49 ¶ 7; ECF No. 59 ¶¶ 2-4.)  Plaintiff also states that Defendant Belisle would become upset if Plaintiff brought up Dr. Saffran's letter and suggested recommendations.  *Id.*

In contrast, Defendant Belisle maintains that he reviewed the letter, considered ways to accommodate Plaintiff, communicated with Plaintiff, and then implemented some changes.  (ECF No. 34 Ex. C p. 31; ECF No. 46 ¶ 4.)  Defendant Belisle acknowledged, however, that he did not fully understand what was requested by some of the recommendations. ECF No. 34 Ex. C. p. 32.)

Plaintiff continued to work as a Probation Officer without any disciplinary action or negative work reviews.  But in August 2007, all of the Probation Officers, except for Plaintiff, were relocated to a different building.  (ECF No. 49 ¶ 8.)  Only Plaintiff remained at the old location with the clerical staff and Defendant Belisle.  *Id*.  This workplace arrangement caused Plaintiff to become explosively angry and suffer an acute episode of suspiciousness and anticipatory anxiety.  As a result, Dr. Saffran wrote a second letter to Plaintiff's employer. This August 22, 2007 letter maintained the prior diagnoses and added Insomnia Related to Depression/Anxiety, again listed the symptoms experienced by Plaintiff, and provided more detail in connection with two of the prior recommendations:

c.    Avoid having supervisors/managers interrupt Mr. Gidge

ORDER - 4

while he is working on projects/paperwork.
    a.  It would be helpful if Mr. Gidge's supervisor/manager could schedule a time between projects and/or paperwork to ask questions relating to other work situations and/or matters.
    b.  This impulsive (last minute) type of interrupt [sic] create undue stress on Mr. Gidge and adds to his level of suspiciousness about why and/or what the reason for the interruption.
    c.  Provide Mr. Gidge with written instructions regarding work assignments, including timelines expected from him.  This will help decrease any misinterpretation that may occur.
d.  Provide Mr. Gidge with social support outlets and the ability to collaborate with his peers.
    a.  It is **NOT** recommended that Mr. Gidge's work station be separate from his coworkers (he should be located at the same building as his coworkers). This type of situation only leads to increased social isolation and increase in his suspiciousness and lack of self confidence.

(ECF No. 48 Ex. B.)  Dr. Saffran recommended these accommodations to reduce the stressors in the relationship between Plaintiff and Defendant Belisle.  Plaintiff delivered this letter to the Yakima County Human Resources Department.  (ECF No. 49 ¶ 10.)

On September 6, 2007, Defendant Belisle, Yakima County Director of Human Resources and ADA Coordinator Linda Dixon, and two other Yakima County employees met to discuss the letter.  (ECF No. 34 Ex. B p. 23; ECF No. 56 ¶ 9.)  This meeting did not include Plaintiff, and Plaintiff was not advised of the meeting until after he asked Defendant Belisle about the status of his requested accommodations in either October or November 2007. (ECF No. 49 ¶ 10.)  No documentation exists about the meeting even though Yakima County has a policy which requires

///

///

//

ORDER - 5

accommodation-declination decisions to be in writing.[3] (ECF No. 34 Ex. B p. 13-16 & 28.)

Nonetheless, Plaintiff still continued to work as a Yakima County Probation Officer without receiving a negative review until February 2008. On February 5, 2008, Plaintiff interviewed a non-cooperative offender who had been transferred to Plaintiff from a different probation officer. After Plaintiff conversed with the offender for approximately twenty to thirty minutes, the offender left Plaintiff's office and then asked to speak with Plaintiff's supervisor. After speaking with the offender, Defendant Belisle summoned Plaintiff into his office and explained that the offender was upset about her prior conversation with Plaintiff. Plaintiff and Defendant Belisle then had a heated forty-five-minute argument regarding the manner in which Plaintiff handled his meeting with the offender. Plaintiff returned to his office after the argument. He had no further discussions with Defendant Belisle regarding the incident that day or the next. Needing to discuss the incident, Plaintiff scheduled a consultation with Dr. Saffran and met with her on February 7, 2008.

According to Dr. Saffran, Plaintiff's February 5, 2008 argument with Defendant Belisle caused Plaintiff to re-experience childhood trauma that Plaintiff attributed to his father. Dr. Saffran diagnosed Plaintiff as suffering from Post Traumatic Stress Disorder which she found existed from 1) childhood abuse by Plaintiff's father and 2) his

---

[3] Likewise, no documentation exists regarding the accommodations requested by Plaintiff in 2005.

ORDER - 6

first responder experience as a police officer, ambulance attendant, and jailer. Dr. Saffran opined that Plaintiff lacks the skills necessary to cope with workplace stressors because he lacks normal insight and often mis-perceives situations as being personal attacks.

Dr. Saffran determined that Plaintiff was no longer able to work. Therefore, Dr. Saffran sent a letter to Yakima County advising that she diagnosed Plaintiff with Acute Stress Disorder and that she "cannot ethically allow him to return to a work environment that denigrates his professionalism, intimidates and creates a risk that threatens his psychiatric stability." (ECF No. 48 ex C.)

Immediately thereafter, Plaintiff applied for disability retirement because he believed he had no other income-stream choice because 1) his physicians discouraged him from returning to work given his blood pressure levels and 2) Defendants had not taken action on his accommodation requests during the past two years. (ECF No. 49 ¶¶ 12 & 13.)

On February 11, 2008, Yakima County prepared a letter identifying potential forms of accommodation for Plaintiff's disability; this letter was provided to Plaintiff on February 18, 2008. (ECF No. 39 Ex. B p. 38.) Because he had applied for and obtained disability retirement, Plaintiff did not respond to this letter. And in February or March 2008, Plaintiff's counsel cancelled a meeting scheduled by Yakima County to discuss ADA accommodations because Plaintiff's blood pressure was up to 200 over 100. (ECF No. 49 ¶ 11.)

On June 1, 2009, Plaintiff filed this action, asserting 1) failure-

ORDER - 7

to-accommodate under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq.; 2) violation of the Washington Law Against Discrimination (WLAD), RCW 49.60.030 and 49.60.180; 3) violation of 42 U.S.C. § 1983; 4) breach of a contractual right and implied covenant of good faith and fair dealing; and 5) retaliation in violation of state law. (ECF No. 1.)  Trial is scheduled for December 6, 2010.  (ECF No. 21.)

**B.  Plaintiff's Motion for Partial Judgment on the Pleadings**

Plaintiff asks the Court to find as a matter of law under Federal Rule of Civil Procedure 12(c) that 1) he suffers from medical disabilities which required workplace accommodations, 2) he requested accommodations for his medical disabilities, and 3) the accommodations were reasonable.  Defendants contend that they did not admit in their answer that Plaintiff is a qualified individual with a disability and that his requested accommodations were reasonable.  Based on Defendants' Answer, the Court grants and denies Plaintiff's motion as explained below.

Although Plaintiff relies on Rule 12(c), the Court determines Rule 12(c) is not the proper avenue to provide Plaintiff with the requested relief.  A Rule 12(c) motion is used if a party seeks entry of judgment. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989).  Judgment is appropriate when the court disposes of a claim or a party.  Fed. R. Civ. P. 54(b).  Here, Plaintiff is not seeking judgment in his favor regarding a claim, but rather to establish *facts*.  The Court determines that Rule 56(d) is the proper avenue of

ORDER - 8

relief. Under Rule 56(d), the Court may examine the pleadings and evidence before it to "determine what material facts are not genuinely at issue." Fed. R. Civ. P. 56(d).

Plaintiff has asked the Court to focus on the Complaint and the Answer to determine whether Defendants have admitted certain material facts and therefore these facts are established. In the Complaint, Plaintiff alleges in the "Factual Basis:" "Prior to February 2008, Defendants YAKIMA COUNTY and YAKIMA COUNTY PROBATION SERVICES received actual knowledge that Plaintiff, RONALD GIDGE, suffered from certain medical disabilities and/or conditions which required reasonable accommodation in the workplace." (ECF No. 1, p. 5, ¶ 12.) To which Defendants answered: "Defendants admit that prior to February 2008, Yakima County received knowledge that Plaintiff Ronald Gidge suffered from *certain disabilities. Yakima County made reasonable accommodations for those disabilities. Defendants deny the remaining allegations in this paragraph*." (ECF No. 8, p. 3, ¶ 12 (emphasis added).) Defendants in response to Plaintiff's Rule 12(c) motion persuasively argue that they did not admit that Plaintiff is "disabled" as that term is used in the ADA and WLAD. The Court reaches this conclusion after reading the Answer as a whole, especially paragraph 12's phrase, "Defendants deny the remaining allegations in this paragraph," and affirmative defense nos. 1 (Plaintiff failed to state a claim upon which relief can be granted) and 7 (Plaintiff failed to state a prima facie case of discrimination). Accordingly, the Court **denies in part** Plaintiff's motion: as discussed below, the jury will decide whether Plaintiff is

ORDER ~ 9

disabled.

The Court **grants** Plaintiff's motion, however, in relation to the fact that Plaintiff requested accommodation. Defendants admit receiving two written requests for reasonable accommodation from Plaintiff's treatment provider. (ECF No. 8. ¶ 13.)

The Court **denies** Plaintiff's request relating to whether it is established that his requested accommodations were reasonable. Defendants admitted that they "promptly acted upon . . . [the two written requests for reasonable accommodation from Plaintiff's treatment provider] and accommodated Mr. Gidge." (ECF No. 8 ¶ 13.) This is not an admission that Plaintiff's requested accommodations were reasonable, but rather that Plaintiff had made a request for reasonable accommodation—a term of art—and an assertion that Defendants had accommodated him, leaving open the question of whether each and every "request for reasonable accommodation" was "reasonable" and whether Defendants did reasonably accommodate him. Accordingly, whether Plaintiff's requested accommodations were reasonable is a question for trial—this is analyzed further in the summary judgment motions below. *See Lujan v. Pac. Mar. Ass'n*, 165 F.3d 738, 743 (9th Cir. 1999) (recognizing that the reasonableness of a requested ADA accommodation is a question of fact).

**C.   Motions for Summary Judgment**

Both parties seek entry of summary judgment. Plaintiff asks the Court to find that no triable issue of fact exists as to Defendants' failure to implement his requested reasonable accommodations from

ORDER - 10

September 26, 2005, to April 1, 2007. And Defendants ask the Court to enter summary judgment in their favor because 1) Plaintiff is not a qualifying individual with a disability and therefore was not entitled to the requested accommodations; 2) Defendants did not take an adverse employment action but rather Plaintiff broke off the interactive process and took disability retirement; 3) Defendant Belisle cannot be personally liable; 4) there is no evidence to support the ADA punitive damages request, and the WLAD does not provide for punitive damages; and 5) there is no written contract to support the contract-based claims.

    1.   <u>Standard</u>

    Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts. In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). When parties file cross-motions for summary judgment, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Fair Housing Council of Riverside Cnty. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion. *Id.*

Guided by this summary judgment standard, the Court turns to the claims at issue. First, however, the Court addresses Defendants' argument that Plaintiff failed to exhaust administrative remedies.

2. <u>Failure to Exhaust</u>

The ADA requires an employee to file a claim of discrimination

within a certain time period.  42 U.S.C. § 2000e-5(e) (2008).  Because Washington is a deferral state, Plaintiff was to file his charge with the Washington Human Rights Commission (WHRC) within 300 days of the claimed event of discrimination.  *See, e.g., MacDonald v. Grace Church Seattle*, 457 F.3d 1079 (9th Cir. 2006).

Plaintiff filed his charge of discrimination with the WHRC on July 1, 2008.  Defendants contend that only events within the 300-day window of this charge of discrimination, i.e., September 18, 2007, to July 1, 2008, are actionable.  The Court disagrees because Plaintiff has asserted that Defendants continuously failed to accommodate his disability.

Under the continuing violation doctrine, "if a discriminatory act takes place within the limitations period and that act is 'related and similar to' acts that took place outside the limitations period, all the related acts—including the earlier acts—are actionable as part of a continuing violation."  *O'Loghlin v. Cnty. of Orange*, 229 F.3d 871, 875 (9th Cir. 2000) (quoting *Anderson v. Reno*, 190 F.3d 930, 936 (9th Cir. 1999)).  Although Defendants' pre-September 18, 2007 conduct falls outside of the 300-day window, this conduct is related and similar to Defendants' alleged failure to accommodate Plaintiff's disability before September 18, 2007.  Also, Defendants' alleged failure to accommodate is based on an ongoing discriminatory policy or attitude.  *Cf. Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993) (finding no evidence that separate incidents of discrimination were based on an ongoing policy of discrimination).  Accordingly, Defendants' request to find Plaintiff's

ORDER - 13

pre-September 18, 2007 allegations time-barred is **denied**.

### 3.   ADA: Failure to Accommodate Claim

The American with Disabilities Act provides in relevant part:

> [n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (2008).[4]  In order to establish a failure-to-accommodate claim under the ADA, the plaintiff must establish that 1) he is a qualified individual with a disability, 2) he requested accommodation, 3) the employer knew of the requested accommodation, and 4) the employer failed to reasonably accommodate the disability. *Sanders v. Arneson*, 91 F.3d 1351, 1353 (9th Cir. 1996) (setting forth elements for an ADA discrimination claim); *Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996) (discussing a failure-to-accommodate claim); *see also* 42 U.S.C. § 12111 (defining terms).  The Court addresses the contested elements below.

a.   *Qualified individual with a disability*

A "qualified individual with a disability" is an "individual with a disability, who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  To satisfy this first element, Plaintiff must establish that he 1) is disabled and 2) can

---

[4]  The Court applies the pre-2009 version of the ADA because the ADA Amendments Act of 2008 are not retroactive.  *See EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009).

ORDER - 14

perform the essential functions of the job with or without reasonable accommodation, i.e., is "qualified."

A "disability" is, in relevant part, "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12012(2). The parties agree that working is a major life activity. *See* 29 C.F.R. § 1630.2(i). But Defendants argue that Plaintiff is not significantly restricted in his ability to perform a class of jobs or a broad range of jobs simply because he is unable to be supervised by Defendant Belisle. The Court finds the cases relied on by Defendants are distinguishable. When viewing the facts in Plaintiff's favor, the symptoms and nature of the impairments experienced by the employees in those cases are significantly different than those experienced by Plaintiff. *Cf. Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055 (7th Cir. 2000) (agreeing with employer that employee's stress related to her supervisor did not preclude her from working a class of jobs or a wide range of jobs and therefore the employee was not disabled); *Benson v. Cal. Corr. Peace Officer's Ass'n*, 2010 WL 682285 (Feb. 24, 2010, E.D. Cal.) (finding that employee's stress and anxiety suffered while working under supervisor did not substantially limit her in the major life activity of working); *Palmer v. Circ. Ct. of Cook Cnty., Soc. Serv. Dep't*, 905 F. Supp. 499 (N.D. Ill. 1995) (finding that employer failed to present evidence that her stress of working for a particular supervisor substantially limited her major life activity of working). Accordingly, Defendants' motion is **denied in part**: the jury will determine whether Plaintiff is disabled.

Defendants also argue Plaintiff is not a *qualified* individual with

a disability; in other words, that Plaintiff is unable to perform the essential functions of the job with or without reasonable accommodation. In determining whether Plaintiff can perform the probation-officer position's essential functions, the Court considers the written position description. 42 U.S.C. § 12111(8). "Essential functions" refer to the position's fundamental duties. *Dark v. Curry Cnty.*, 451 F.3d 1078, 1087 (9th Cir. 2006)November 4, 2010.

After considering the evidence in Plaintiff's favor, the Court finds triable issues of material fact exist as to whether Plaintiff could perform a probation officer's essential functions with or without accommodation. Although Plaintiff admitted he suffered immense stress and that his mental and medical conditions worsened as a result of Defendant Belisle's supervision, there is no evidence to support a finding that he could not perform the essential functions of a probation officer with accommodation. In the twenty-two years that Plaintiff served as a probation officer, the only disciplinary action taken was for the amount of time he spent at lunch and the February 5, 2008 argument with Defendant Belisle. His performance evaluation reviews were positive, and there was sufficient confidence in Plaintiff's performance to assign him the challenging offender in February 2008. There is no indication that Defendants considered Plaintiff unable to perform as a probation officer, even in light of the 2005 and 2007 letters seeking accommodation from Dr. Saffran. Accordingly, the Court finds triable issues of material fact exist as to whether Plaintiff could perform the essential functions of a probation officer with or

ORDER - 16

without reasonable accommodation.[5]  Defendants' motion is **denied in part**.

        b.   *Reasonable accommodation*

It is as to this element that Plaintiff seeks partial summary judgment.  Plaintiff contends no triable issue of fact exists as to Defendants' failure to implement his requested reasonable accommodations from September 26, 2005, to April 1, 2007.[6]  Defendants contend that the evidence establishes that Plaintiff's requested accommodations were not reasonable and seeks summary judgment in its favor on Plaintiff's ADA claim.

Taking Defendants' motion first, the Court finds, after reviewing the submitted evidence in Plaintiff's favor, that genuine issues of material fact exist as to whether Defendants sufficiently engaged in the interactive process to determine whether a reasonable accommodation existed.  When requesting an accommodation,[7] the employee is "not required to use any particular language . . . but need only 'inform the employer of the need for an adjustment due to a medical condition.'"

---

[5]  The cases relied upon by Defendants are not helpful to determine whether Plaintiff is *qualified* but rather are helpful to analyze whether Plaintiff's requested accommodations were reasonable. The reasonableness of the requested accommodations is discussed below.

[6]  Plaintiff initially asked the Court to make this finding as to the September 26, 2005, to August 22, 2007 time frame.  However, in his reply, Plaintiff limited it to September 26, 2005, to April 1, 2007.

[7]  "An accommodation is something concrete—some specific action required of the employer." *Beck*, 75 F.3d at 1135.

ORDER – 17

*Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (quoting *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000), *vacated on other grounds by U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002)). Once an employee requests an accommodation, "the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." *Id.* at 1089. The burden of identifying a potentially reasonable accommodation is not placed solely on the employee; rather, the interactive process is the means by which it is determined whether a reasonable accommodation exists. *Barnett*, 228 F.3d at 1113. Accordingly, the employer has an "affirmative obligation to engage in an interactive process in order to identify, if possible, a reasonable accommodation that would permit . . . [the employee] to retain his employment." *Dark*, 451 F.3d at 1088. This interactive-process obligation is not exhausted by one effort: it is a continuing duty. *Id.*

Plaintiff's evidence establishes that Defendants did not engage in the interactive process after Plaintiff requested accommodation in the 2005 and 2007 letters. Defendant Belisle never discussed the requests with Plaintiff or Human Resources in 2005. And in 2007, there was no interaction with Plaintiff and no formal implementation of any accommodation even though Defendant Belisle, Ms. Dixon, and other Yakima County employees met.

Defendants correctly emphasize that a change in supervisor is not a reasonable accommodation because this is unduly burdensome on the employer. *See Adams v. Alderson*, 723 F. Supp. 1531, 1531 (D. Col. 1989)

(commenting that it was not reasonable to assign an individual with a propensity for violence to a new supervisor). However, job restructuring, a modified work schedule, and other similar accommodations are reasonable. 42 U.S.C. § 12111(9). When viewed in Plaintiff's favor, the evidence establishes that Defendants failed to interact with Plaintiff to determine whether reasonable accommodations existed. Accordingly, the Court finds triable issues of material fact exist as to whether Defendants complied with their interactive-process obligation and, even if Defendants did engage in the interactive process, whether a reasonable accommodation existed. *Cf. Benson*, 2010 WL 682285 at 7 (discussing the accommodations offered by the employer to facilitate the employee's return to work); *see also Beck*, 75 F.3d at 1136 (concluding that the employee failed in good faith to participate in the interactive process).

The Court now turns to Plaintiff's motion concerning the September 26, 2005, to April 1, 2007 time frame. Viewing the evidence in Defendants' favor, the Court again finds triable issues of fact as to whether Defendants complied with their interactive-process obligation and, even if Defendants did engage in the interactive process, whether a reasonable accommodation existed. During this time frame, Defendant Belisle considered and implemented some of the requested accommodations by reducing the number of interruptions and being available to discuss issues confronting Plaintiff. If the jury finds Defendant Belisle credible, the jury should assess whether these accommodations satisfied the ADA's requirements.

ORDER - 19

In summary, because Plaintiff and Defendant Belisle sharply disagree as to the nature and extent of the interactive process during this time period and whether accommodations were implemented, the Court **denies** Plaintiff's motion for partial summary judgment and the ADA portion of Defendants' motion.

        c.    *Individual Liability*

Although the Court finds triable issues of fact exist as to whether 1) Plaintiff is a qualified individual with a disability and 2) Plaintiff's employer reasonably accommodated Plaintiff's disability, the Court finds summary judgment in Defendant Belisle's favor is necessary because only an employer is liable for an ADA violation. *See Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006) (ruling that an individual defendant cannot be personally liable for ADA violations). Because Defendant Belisle was not Plaintiff's employer, Defendants' motion is **granted in part**.

    4.    WLAD

        a.    *Failure to Accommodate*

The parties agree that Plaintiff's WLAD failure-to-accommodate claim under RCW 49.60.180(3) follows the same analysis as the ADA's failure-to-accommodate claim. *See Davis v. Microsoft Corp.*, 149 Wn.2d 521, 533 (2003); *Townsend v. Walla Walla Sch. Dist.*, 147 Wn. App. 620, 626-27 (2008); *Wilson v. Wenatchee Sch. Dist.*, 110 Wn. App. 265, 269-70 (2002). Therefore, for the reason given above, the Court finds triable issues of fact exist as to whether 1) Plaintiff is a qualified individual with a disability and 2) Plaintiff's employer complied with

reasonable-accommodation obligations. Further, because RCW 49.60.180 applies to an "employer," the Court finds that Plaintiff cannot seek individual liability as to Defendant Belisle. Therefore, Defendants' motion is **granted** (Defendant Belisle) **and denied** (WLAD failure-to-accommodate claim against employer) **in part**.

      b.   *Retaliation*

To prove retaliation under RCW 49.60.210, Plaintiff must establish that 1) he engaged in a protected activity, 2) Defendants[8] took an adverse employment action, and 3) there is a casual link between the protected activity and the adverse action. *See Hines v. Todd Pac. Shipyards Corp.*, 127 Wn. App. 356, 374 n.22 (2005). Defendants argue that Plaintiff cannot maintain this retaliation claim because Washington has not recognized an employer's failure to accommodate as an adverse employment action. The Court disagrees.

Although no Washington case has specifically addressed this question, the Washington Appellate Court approved the following "adverse employment action" jury instruction:

---

[8]  RCW 49.60.210(1) is not limited to employers but rather applies to "any employer, employment agency, labor union, or *other person*." (Emphasis added.) Accordingly, the Court **denies** Defendant Belisle's request to dismiss this claim against him. *Cf. Malo v. Alaska Trawl Fisheries, Inc.*, 92 Wn. App. 927, 930-31 (1998) (noting that co-worker was not a supervisor and therefore dismissed RCW 49.60.210 claim because the statute does not create personal and individual liability for co-workers).

ORDER - 21

> To take "adverse employment action" means to refuse to hire, to discharge, to demote, *or otherwise to discriminate* in compensation or *in other terms and conditions of employment*. To amount to a change in the terms and conditions of employment, an action must be more than an inconvenience or alteration of job responsibilities.

*Burchfiel v. Boeing Corp.*, 149 Wn. App. 468, 493 (2009) (emphasis added). An employer's failure to accommodate an employee's requested accommodation for a disability could satisfy this definition of "adverse employment action." *See also Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006) (defining "adverse employment actions" in the context of Title VII action as "those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant . . . [such as dissuading] a reasonable worker from making or supporting a charge of discrimination").

It is undisputed that Plaintiff engaged in protected activity, i.e., requesting an accommodation for his alleged disability. And after reviewing the evidence in Plaintiff's favor, the Court finds triable issues of fact exist as to whether 1) Defendants took an adverse employment action, such as failing to reasonably accommodate Plaintiff's alleged disability or by constructively discharging Plaintiff, *see Townsend*, 147 Wn. App. at 627-28 (discussing constructive discharge), and 2) Defendants' actions were motivated by Plaintiff's disability-accommodation request. Defendants' motion is **denied** in part.

   c.   *Breach of contract and implied covenant*

Because Plaintiff admits that there is no employment contract, the Court **grants** Defendants summary judgment as to Plaintiff's breach of contract and implied covenant of good faith and fair dealing claims.

ORDER - 22

5.   <u>Punitive Damages</u>

Defendants contend that Plaintiff's 1) federal-law punitive damages request should be dismissed because a) summary judgment was appropriate as to the ADA claim and b) there are no facts to establish the existence of an official policy or established custom depriving Plaintiff of a federal right; and 2) state-law punitive damages request should be dismissed because the WLAD does not allow for punitive damages.

Taking Defendants' latter argument first, Defendants are correct that neither the WLAD nor RCW 49.60.030(2) provide for a punitive damages award.  *See Daily v. N. Coast Life Ins. Co.*, 129 Wn.2d 572, 576 (1996).  Accordingly, Defendants' motion is **granted** in part:  Plaintiff may not seek punitive damages in connection with his state law claims.

The Court **denies** Defendants' motion relating to Plaintiff's ADA punitive damages request.  When the evidence is viewed in Plaintiff's favor, there is a triable issue of fact as to whether Defendants had an established custom that deprived Plaintiff of his right under the ADA to be free from disability discrimination in the workplace.

**D.   Conclusion**

For the reasons given above, **IT IS ORDERED:**

1.   Defendants' Motion for Summary Judgment **(ECF No. 24)** is **GRANTED** (ADA and WLAD failure-to-accommodate claims against Defendant Belisle; contract claims; and state-claim punitive damages request) **and DENIED** (all other aspects) **IN PART.**

2.   Plaintiff Ronald Gidge's Motion for Partial Judgment on the Pleadings **(ECF No. 36)** is **GRANTED** (Plaintiff requested accommodation)

ORDER - 23

**and DENIED** (all other aspects) **IN PART.**

   3.   Plaintiff's Motion for Partial Summary Judgment **(ECF No. 31)** is **DENIED.**

   **IT IS SO ORDERED.**   The District Court Executive is directed to enter this Order and distribute copies to counsel.

   **DATED** this ____8th____ day of November 2010.


                    _____S/ Edward F. Shea_____
                         EDWARD F. SHEA
                    UNITED STATES DISTRICT JUDGE

Q:\Civil\2009\3052.final.msj.judgment.wpd

ORDER - 24